IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 17-cv-00230-MSK

LAURA DE FALCO MILLER,

    Plaintiff,

v.

NANCY BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

_____

**OPINION AND ORDER REVERSING COMMISSIONER'S DECISION**
_____

**THIS MATTER** comes before the Court for consideration of Ms. De Falco Miller's appeal from the denial of her application for Social Security Disability ("SSDI") benefits. The Court has considered the Administrative Record **(# 14)**, and the parties' briefs as to the merits **(#17, 18, 19)**.

## FACTS

The Court summarizes (and briefly comments upon) the pertinent facts here and elaborates as necessary in its analysis. Ms. De Falco Miller, then 48 years old, applied for SSDI benefits in July 2013, citing a disability onset date of the same month. Ms. De Falco Miller suffers from a bipolar disorder that affects her ability to concentrate and retain and understand instructions. She also suffers from physical impairments in the form of arthritis and lupus that restrict her ability to sit, stand, reach, and so on. Ms. De Falco Miller has a high school education and although she held a variety of jobs for short periods of time between 1991 and

2008, those jobs do not amount to a meaningful work history and she has not performed any gainful work since 2008.

An ALJ heard Ms. De Falco Miller's claim in August 2015. The ALJ took testimony from Ms. De Falco Miller and from a vocational expert ("VE"), and reviewed records from several medical providers, discussed below.

Ms. De Falco Miller testified that she suffers from "bad arthritis" and lupus, which causes her pain in her hands and shoulders. She testified that she had difficulty grasping and holding objects and opined that she could not even lift five pounds or raise her arms to shoulder level. She also testified about suffering from levator ani, a rectal disorder, that caused her to have to frequently change positions from standing to sitting and vice-versa, and required her to lay down after having a bowel movement. Mentally, she reported suffering from bipolar disorder that would cause her mind to race. She stated that the situation caused her to have "a hard time keeping track of what I'm doing and thinking." She stated that she had trouble processing emotions, and would have to write down instructions she received from supervisors to recall them, and that having to re-read them would cause her to become angry. She explained that her limitations in concentration make driving, shopping, and watching movies difficult.

Ms. De Falco Miller's treating psychiatrist was Dr. Nizami.[1] He saw Ms. De Falco Miller on numerous occasions over a seven-year period and treated her bipolar disorder. He completed a residual functional capacity ("RFC") evaluation form, opining that Ms. De Falco Miller had moderate impairments in the ability to understand and remember detailed instructions; moderate limitations in most aspects of sustaining concentration on all but the simplest of tasks;

---

[1] Ms. De Falco Miller also received regular psychological counseling from a therapist. The ALJ's decision does not address the therapist's treatment records and Ms. De Falco Miller does not ascribe any error to that omission.

moderate limitations in her ability to relate to co-workers, supervisors, and the public; and mostly moderate limitations in her ability to adapt to changes in job circumstances. Dr. Nimazi also opined that Ms. De Falco Miller would be "mentally off-task" for 20-30% of the work week.

In his decision, the ALJ announced that he gave "little weight" to Dr. Nimazi's RFC opinions, finding that they were "not supported by the record as a whole." In support of that conclusion, the ALJ cited to Dr. Nimazi's reports from January 2015 exam in which Ms. De Falco Miller's "flow of thought" was "intact with no looseness of association, circumstantiality, or tangentiality." In that same report, the ALJ found, Dr. Nimazi noted that Ms. De Falco Miller "indicated that she was able to concentrate adequately and stay on the topic of conversation without any difficulty." The ALJ did not discuss whether the January 2015 examination was consistent with the entire course of treatment Ms. De Falco Miller was received from Dr. Nimazi.

The ALJ gave "partial weight" to Dr. Nimazi's opinions regarding Ms. De Falco Miller's limitations in activities of daily living and social functioning.

The ALJ rejected Dr. Nimzai's opinions that Ms. De Falco Miller would be off-task 20-30% of the time, finding that opinion was not supported by the record. As to that latter point, the ALJ noted that treatment reports from Dr. Nizami's visits with Ms. De Falco Miller in March, May, and September 2014 all reported generally normal results. The ALJ's specific explanation on this point warrants comment: the ALJ demonstrates a repeated tendency to announce a conclusion ("the opinion regarding being off-task is not supported"), quote substantial portions of the provider's medical records, and then move on, apparently assuming that those quotations patently demonstrate a basis for the conclusion. More often than not, however, the quoted portions of the medical records are largely irrelevant to the point for which the ALJ offers them.

For example, in support of his contention that Dr. Nimazi's 20-30% off-task opinion is not supported by the record, the ALJ points to the following observations from Dr. Nimazi's May 2014 visit with Ms. De Falco Miller: "the claimant's speech rate was normal. Sensorium were clear and she was oriented to all spheres. Memory skills were intact. Further, insight and judgment were adequate, and suicide risk was found to be low."[2] Matters relating to Ms. De Falco Miller's speech rate, her sensory processing, her orientation as to time and place, her memory, and her risk of suicide have nothing to do with the limitations that Ms. De Falco claims actually cause her to be off-task: racing thoughts and impairments in concentration and focus. Almost none of the quotations offered by the ALJ to support the decision to disregard Dr. Nimazi's opinions about Ms. De Falco Miller veering off-task address her complaints of racing thoughts or limited concentration. The only pertinent quotation from Dr. Nimazi's records that the ALJ provides that is germane to this issue is the one relating to "flow of thought" from the January 2015 exam (which is not one of the three 2014 dates listed in the ALJ's reasons for rejecting Dr. Nimazi's off-task RFC opinion).

Ms. De Falco Miller also presented evidence from Dr. Timms, her treating rheumatologist. He diagnosed Ms. De Falco Miller as suffering from lupus. He reported that she experienced a rash on her upper extremities and shoulder pain. He opined that she could not life more than ten pounds, sit or stand for more than two hours each per day (changing positions every 15-20 minutes), could do up to one hour per day of reaching and handling (but no fingering), and could not perform any stooping, squatting, or crawling. The ALJ noted that these restrictions were "so restrictive as to render the claimant disabled," but decided to give them

---

[2]   The ALJ's observations about the September 2014 visit are even more abbreviated: the ALJ takes interest only in the fact that Dr. Nimazi reported that Ms. De Faclo Miller had "appropriate mood and affect" and that she was, again, "oriented as to all spheres."

"little weight." The ALJ found that the posture limitations and reaching/grasping/fingering limitations were "not supported by the record." In support of this proposition, the ALJ again quoted large chunks of statements from Dr. Timms' medical records, but the statements the ALJ chose to quote again have no real bearing on the issues of Ms. De Falco Miller's postural or dexterity limitations. Among other things, the ALJ twice notes in Dr. Timms' notes the absence of "alopecia" (that is, hair loss at the scalp), the absence of rashes, mentions that Ms. De Falco Miller's reflexes were normal and symmetrical, and mentions that her sensory, motor, and cerebellar functions were normal. None of these findings pertain to Dr. Timms' conclusion that Ms. De Falco Miller had significant postural and dexterity limitations.

The ALJ also considered medical evidence from Adam Summerlin, an examining physician whose RFC opinions limited Ms. De Falco Miller to six hours of standing and walking per day, four hours sitting, lifting of 10 lbs. frequently and 20 lbs. occasionally, and allowed for frequent postural activities like kneeling or crawling. The ALJ found that the "limitation to light work" was supported by the record, but that the postural limitations were not. Once again, this conclusion is supported by a recitation of findings from Dr. Summerlin's exam that have little bearing on the question of whether postural limitations are appropriate – *e.g.* observations that Ms. De Falco Miller's reflexes were normal and that she did not use an assistive device.

Finally, the ALJ considered the report of a state agency psychological consultant "who found the mental impairments nonsevere." Curiously, the ALJ gave that opinion "little weight," finding that "the record supports greater restriction." (The quotations from the record the ALJ uses to support that conclusion are essentially the same findings from the March-September 2014 records from Dr. Nimazi, which point to Ms. De Falco Miller having "normal" exam results.

Contrary to the ALJ's finding, these would seem to affirm, rather than undercut, the consultant's opinion.  Ultimately, this confusing discrepancy does not factor into the analysis.)

Turning to the vocational expert at the hearing, the ALJ inquired of the availability of unskilled and non-complex work for a person with Ms. De Falco Miller's age and education, with a restriction to light exertion, occasional reaching above chest height, frequent handling/grasping/fingering, and only occasional dealings with customers and co-workers.  The VE opined that jobs such as production assembler, dry cleaning worker, and housekeeper/cleaner would fit those limitations.  The ALJ posited a second situation, with the same limitations, plus an additional limitation that the worker would be off-task 20-30% of the time.  The VE stated that no jobs meeting those restrictions would exist.  The ALJ tendered a third hypothetical, with the same limitations as the first, but changing from light work to sedentary work with no more than two hours each of standing and sitting per day, and no kneeling or crawling or stooping. After clarifying that walking would fit within the two-hour limitation on standing, the VE opined that the limitation to a four-hour workday would eliminate all meaningful work opportunities.

In his decision, the ALJ found that, at Step 1, Ms. De Falco Miller had no history of gainful employment.  At Step 2, he determined that she suffered from impairments in the form of lupus, obesity, anxiety, and affective disorder.  At Step 3, the ALJ found that none of these impairments, individually or in combination, met the listings found in the Social Security regulations.  The ALJ then made his own RFC assessment.  It is somewhat difficult to recite the exact contours of the ALJ's RFC findings: the ALJ never summarizes them and they are somewhat scattered in the record and, occasionally oblique and vague.  As best the Court can determine, the ALJ:

> • Found that she had mild restrictions in activities of daily living, such as lifting, sitting, concentrating, and following instructions.

> He noted that, although Ms. De Falco Miller testified to having difficulties in these areas, she had admitted to being able to attend to her personal care needs, to prepare meals, to drive, shop, and pay bills, to watch t.v., to go to church, and to spend time with friends. The ALJ found that she had moderate difficulties in social functioning and in maintaining concentration, persistence, and pace.
>
> • Gave weight to Dr. Summerlin's opinion that she could perform light work, but rejected Dr. Summerlin's opinion that she could not perform postural activities, suggesting that the ALJ believed Ms. De Falco Miller <u>could</u> perform tasks involving kneeling, crouching, etc.
>
> • Gave weight to Dr. Nizami's opinion the she suffered from moderate limitations in activities of daily living, functioning, concentration, and persistence and pace, but rejected the opinion that she would be off-task 20-30% of the time.

One can infer, from the ALJ's questions to the VE and the ultimate decision, that the AL's final RFC evaluation found that Ms. De Falco Miller was capable of performing light work, of occasionally reaching above chest height, of frequent grasping/handling/fingering, of standing and sitting for a total of significantly more than four hours per day, and only occasional interactions with co-workers and the public. Based on these findings, the ALJ found that Ms. De Falco Miller was not disabled.

Ms. De Falco Miller appealed the ALJ's decision to the Appeals Council, but the Council denied review. Ms. De Falco Miller then commenced the instant appeal. In her brief, she contends that the ALJ erred in the following respects: (i) although the ALJ stated that he was giving weight to Dr. Nizami's moderate mental restrictions, he failed to account for those restrictions in determining the RFC – that is, the ALJ did not account for Dr. Nizami's findings that Ms. De Falco Miller would be limited in her ability to interact with and respond to supervisors; (ii) the ALJ erred in rejecting Dr. Timms' opinions entirely, and by focusing solely on exam findings (which Ms. De Falco Miller also argues the ALJ misconstrued) without

considering the factors of 20 C.F.R. § 416.927(c)(1-6); and (iii) the ALJ erred in failing to address Dr. Summerlin's time restrictions on standing or his limitations on Ms. De Falco Miller doing occasional reaching with her <u>left</u> arm (it is unclear whether Dr. Summerlin believed Ms. De Falco Miller could do <u>no</u> reaching with her right arm or <u>unlimited</u> reaching with that arm), particularly where all of the relevant work identified by the VE required frequent reaching.

## ANALYSIS

### A. Standard of review

On appeal, a reviewing court's judicial review of the Commissioner of Social Security's determination that claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the Commissioner's decision is supported by substantial evidence. *Hamilton v. Sec'y of Health &Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). If the ALJ failed to apply the correct legal standard, the decision must be reversed, regardless of whether there was substantial evidence to support factual findings. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). In determining whether substantial evidence supports factual findings, substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires more than a scintilla but less than a preponderance of the evidence. *Lax*, 489 F.3d at 1084; *Hedstrom v. Sullivan*, 783 F. Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Although a reviewing court must

meticulously examine the record, it may not weigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### B. Treating Physician Rule

A treating physician's opinion must be given controlling weight if (1) it is well supported by medically acceptable clinical and laboratory diagnostic techniques and (2) it is consistent with the other substantial evidence in the record. *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007). If either of these requirements is not satisfied, then the opinion is not accorded controlling weight. To give a treating provider's opinion less than controlling weight, the ALJ must give specific and legitimate reasons. *Drapeau v. Massanri*, 255 F.3d 1211 (10th Cir 2001). This requires that the ALJ be specific in describing how the opinion is unsupported by clinical and laboratory diagnostic techniques, or identify how it is inconsistent with substantial evidence in the record. *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).

If a treating physician's opinion is not given controlling weight, its relative weight must be assessed in comparison to other medical opinions in the record. The factors considered for assessment of weight of all opinions are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Allman v. Colvin*, 813 F.3d 1326, 1331–32 (10th Cir. 2016). None of these factors are controlling; not all of them apply to every case, and an ALJ need not expressly discuss each factor in his or her decision. *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir.

2007). However, "the record must reflect that the ALJ *considered* every factor in the weight calculation." *Andersen v. Astrue*, 319 Fed. App'x 712, 718-19 (10th Cir. 2009) (emphasis in original). Finally, just as when an ALJ determines whether to give a treating provider's opinion controlling weight, the ALJ must provide legitimate, specific reasons for the relative weight assigned. *Langley*, 373 F.3d at 1119.

Both Dr. Nizami and Dr. Timms were Ms. De Falco Miller's treating physicians, and thus, the ALJ was required to evaluate them according to the standards set forth above. The Court finds that the ALJ did not do so. The error was most acute with Dr. Timms and the Court will turn first to that situation. The sum of the ALJ's evaluation of Dr. Timms' opinion reads as follows:

> Little weight is given to Patrick Timms, M.D., whose opinion notes limitations so restrictive to render the claimant disabled. Specifically, he noted that the claimant could never stoop, squat, crawl or kneel, and she could seldom reach and handle and never finger. This is not supported by the record. She was not in acute distress. There was no cyanosis, clubbing, or swelling in the extremities. Further, no rash was appreciated. Several months later, there were a few non erythematous papular lesions on the upper extremities. There was no alopecia. Deep tendon reflexes were normal. Sensation was intact, and motor exam showed no muscle weakness. There were tender points in the paracervical, parathoracic, and paralumbar regions. She complained of polymyalgias and arthralgias in December 2014. On exam, there was a region of dermatitis over the left deltoid region. Scalp revealed no alopecia. Additionally, deep tendon reflexes were normal and equally symmetric. Further, sensory, motor, and cerebellar functions were normal.

The Court first notes that the ALJ's explanation of the weight given to Dr. Timmes' opinions overlooks the obligation of the ALJ to first determine whether Dr. Timms' treating source opinions were entitled to <u>controlling</u> weight before assigning them <u>relative</u> weight. It

appears that the ALJ simply jumped to the assessment of relative weight. Doing so constitutes legal error. *See Krauser v. Astrue*, 638 F.3d 1324, 1330-31 (10th Cir. 2011).

If the reasons articulated by the ALJ would be sufficient for a determination that Dr. Timms' opinions should not be given controlling weight, then the error is harmless. Thus, the Court considers whether the reasons given by the ALJ are sufficient for the determination that Dr. Timms' opinions are not entitled to controlling weight. The first consideration in determining whether to give the opinions controlling weight is whether they are well supported by medically acceptable clinical and laboratory diagnostic techniques. There is no discussion in the ALJ's decision as to this factor, and the Court cannot meaningfully review it.

Second, to the extent the ALJ intended the discussion above to reflect a finding that Dr. Timms' opinions were not supported by substantial evidence in the record – the second factor in the controlling weight analysis – the ALJ must specifically identify "those portions of the record with which [the treating physician's] opinion was allegedly inconsistent." *See Krauser v. Astrue*, 638 F.3d 1324, 1331 (10th Cir. 2011). As noted above, the ALJ's recitation of various exam observations does not refute Dr. Timms' opinions about significant limitations as to Ms. De Falco Miller's ability to reach and handle items because the recited observations have nothing to do with reaching and handling limitations. The presence or absence of alopecia, of symmetrical reflexes, of a rash, of other anomalies does not establish or rule out any reaching or handling limitations, any more than observing that Ms. De Falco Miller's body temperature was 98.7 degrees or her blood pressure was 130/75 does.

The ALJ's failure to adequately assess Dr. Timms' opinion is significant, insofar as Dr. Timms opined that Ms. De Falco Miller had significant restrictions on her ability to reach and handle items, whereas the ALJ's RFC evaluation and questions to the VE assumed Ms. De Falco

Miller could do occasional reaching and frequent handling. Thus, the ALJ's reasons for assigning little weight to Dr. Timms' opinions are insufficient to demonstrate application of the legal standard that governs evaluation of the opinion of a treating physician. Failure to demonstrate application of the correct legal standard constitutes legal error, requiring reversal and remand.

A similar analysis demonstrates that the ALJ erred in evaluating Dr. Nizami's treating opinions as well. The Court will not recite the entirety of the ALJ's analysis of Dr. Nizami's opinions; it is sufficient to observe that, once again, the ALJ skipped over the controlling weight analysis and proceeded directly to the relative weight question, that the ALJ improperly failed to assess whether Dr. Nizami's findings were supported by appropriate diagnostic techniques, and that the ALJ improperly relied upon an array of irrelevant exam observations to reject Dr. Nizami's conclusions, most significantly, the conclusion that Ms. De Falco Miller would be off-task 20-30% of her workday. To be sure, there is some evidence that, on a single visit in 2015, Ms. De Falco Miller exhibited normal "flow of thought" and was able to concentrate adequately and stay on the topic of conversation without any difficulty, but the record does not reflect the ALJ having evaluated whether that single visit reflected a sustainable improvement in Ms. De Falco Miller's condition or an aberrant "good day" in a consistent pattern of poor focus and concentration. Accordingly, reversal is required as to the ALJ's findings regarding Dr. Nizami's opinions as well.

The Court need not proceed to address Ms. De Falco Miller's remaining contentions, but it does so briefly. Ms. De Falco Miller is correct that the ALJ apparently gave weight to some portions of Dr. Nizami's opinions – including his opinions as to Ms. De Falco Miller's moderate impairments in social functioning and concentration, finding that "the moderate limitations are

supported by the record." Ms. De Falco Miller is also correct that, in framing the issue to the VE, the ALJ did not inquire about whether the available work would accommodate Ms. De Falco Miller's moderate limitations in the ability to take instructions from supervisors and to adapt to changes in the work setting, among others. It is notable that, in rejecting some of Ms. De Falco Miller's testimony as inconsistent with the record, the ALJ never expressly stated that he was rejecting Ms. De Falco Miller's testimony that she had to write down and constantly re-read instructions that others gave her to complete tasks. None of the examples the ALJ gave of such inconsistencies – attending church, shopping, doing light cleaning, etc. – required Ms. De Falco Miller to take instructions from another person and act on them. Because responding to instructions is an important part of holding down a job, and because there was evidence that the ALJ credited the fact that Ms. De Falco Miller was moderately limited in her ability to do so, the ALJ's failure to include that limitation in the hypotheticals to the VE constitute an error requiring reversal as well.

## CONCLUSION

For the reasons state above, the Commissioner's decision is **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Dated this 21st day of March, 2018.

BY THE COURT:

_Marcia S. Krieger_

Marcia S. Krieger
Chief United States District Judge